MICROSOFTWARE COMPUTER SYSTEMS, INC., Plaintiff-Appellee,

v.

ONTEL CORPORATION, Defendant-Appellant.

No. 81–2216.

United States Court of Appeals, Seventh Circuit.

Argued Jan. 18, 1982.

Decided Aug. 12, 1982.

Michael W. Pinsof, Wolfe & Polovin, Chicago, Ill., for defendant-appellant.

John P. Scotellaro, Bell, Boyd & Lloyd, Chicago, Ill., for plaintiff-appellee.

Before CUMMINGS, Chief Judge, BAUER, Circuit Judge, and DOYLE,* Senior District Judge.

CUMMINGS, Chief Judge.

This case of first impression requires us to decide whether a district court is ever required to stay its proceedings pending the resolution of identical proceedings in a state court.

On December 15, 1980, Ontel, a New York corporation, filed an action in the Supreme Court of Nassau County, New York, alleging that Microsoftware Computer Systems (MCS), an Illinois corporation, owed it money for goods it had delivered pursuant to a contract. The contract did not provide for arbitration of disputes, but did provide that "[t]he laws of the State of New York * * * shall govern this Agreement." Art. X, ¶ 6. Process was served on a secretary at MCS's Lombard, Illinois, offices on December 23, 1980. MCS claimed that service of process was ineffective but on May 26, 1981, the Supreme Court of Nassau County held that service of process was effective and at the time of the oral argument here that issue was still on appeal in the New York state courts. MCS has answered Ontel's complaint and filed a counterclaim, and there has been some discovery taken.

On February 25, 1981, MCS filed this action in the district court based on diversity of citizenship, alleging breach of warranty, fraudulent misrepresentations, breach of contract, and violation of the Illinois Consumer Fraud and Deceptive Practices Act (Ill.Rev.Stat. ch. 121½, §§ 261 et seq.)—all in connection with the sale of goods that is the subject of the New York state action. Although our record on appeal lacks the New York pleadings, MCS has not disputed that the claims filed in the Illinois district court have also been asserted in its answer and counterclaim in the New York state action. The district court too stated that it "was aware of the fact that the two cases are substantially identical." Transcript of Denial of Motion for Reconsideration p. 4. Thus the only difference between the state and federal court actions is that in New York, Ontel is the plaintiff, while in Chicago, MCS is the plaintiff.

On March 23, 1981, Ontel filed a motion requesting that the district court proceedings be stayed pending a final disposition of the New York state court action. The district court denied the motion and Ontel's subsequent motion for reconsideration, and ordered Ontel to answer the complaint. Ontel now appeals the district court's denial of the stay.

I

As a preliminary matter, this Court must have jurisdiction to hear an appeal from the denial of a stay. We have held that the *granting* of a stay pending litigation in the state courts may be appealable as a final decision under 28 U.S.C. § 1291, *Drexler v. Southwest Dubois School Corp.*, 504 F.2d 836, 838 (7th Cir. 1974) (*en banc*),[1] but the *denial* of such a stay is hardly a final decision in the sense of "end[ing] the litigation on the merits and leav[ing] nothing for the court to do but execute the judgment."

---

* The Honorable James E. Doyle, Senior District Judge of the United States District Court for the Western District of Wisconsin, is sitting by designation.

1. See also *Baltimore Bank For Cooperatives v. Farmers Cheese Cooperative*, 583 F.2d 104, 109 (3d Cir. 1978) (stay of diversity action requiring parties to proceed before state agency was appealable as a final order); *Hines v. D'Artois*, 531 F.2d 726 (5th Cir. 1976) (stay of action under 42 U.S.C. §§ 1981 and 1983 to require plaintiff to file a complaint with EEOC under 42 U.S.C. §§ 2000e et seq. was appealable as final order); *Kelley v. Metropolitan County Board of Education*, 436 F.2d 856 (6th Cir.

1970) (order staying pupil integration proceedings indefinitely was appealable as final order); *Amdur v. Lizars*, 372 F.2d 103 (4th Cir. 1967) (stay of stockholders' derivative action pending determination of similar state court action was appealable as final order). This Circuit has followed a more complicated rule to determine appealability of stays granted pending arbitration, discussed *infra*, and we have held that such stays may not be appealed as final orders under 28 U.S.C. § 1291. *Whyte v. THinc Consulting Group Int'l*, 659 F.2d 817, 818 (7th Cir. 1981); *Great American Trading Corp. v. I. C. P. Cocoa, Inc.*, 629 F.2d 1282 (7th Cir. 1980).

*Catlin v. United States*, 324 U.S. 229, 233, 65 S.Ct. 631, 633, 89 L.Ed. 911. On the contrary, the district court's order denying the requested stay signaled the parties to begin litigating the merits of their dispute.

■ Likewise, the collateral order exception to finality does not allow an appeal under Section 1291, although arguably two of its three prerequisites are satisfied by the denial of a stay here. The district court's decision to deny the stay (1) "resolve[d] an important issue completely separate from the merits of the action, and [ (2) would be] effectively unreviewable on appeal from a final judgment" because by then the extra resources needed to prosecute and decide two identical lawsuits will already have been spent. *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 468, 98 S.Ct. 2454, 2457, 57 L.Ed.2d 351 (setting out tests for collateral order exception). However, the third prerequisite to immediate appeal under the collateral order doctrine—that the order "conclusively determine the disputed question," *id.*—is not met because the district court is free to reconsider its denial of the stay throughout the course of the litigation. *Cf. Hastings v. Maine-Endwell Central School District*, 676 F.2d 893, 896 (2d Cir. 1982) (order awarding interim attorneys' fees not appealable in part because district court may award more or fewer fees as action progresses). Therefore we have no appellate jurisdiction under 28 U.S.C. § 1291.

■ Ontel argues that this particular order denying a stay should be deemed equivalent to an order refusing to grant an injunction, and therefore immediately appealable under 28 U.S.C. § 1292(a)(1). For a number of practical and historical reasons, we agree.[2]

■ The primary practical reason for allowing an appeal from this order is that the decision not to stay is effectively unreviewable on appeal from a final judgment. There is simply no remedy for the wasting of time and resources once it has occurred. We are mindful that a district court cannot slough off its cases in order to reduce the crowdedness of its docket, *Thermtron Products, Inc. v. Hermansdorfer*, 423 U.S. 336, 344–345, 96 S.Ct. 584, 589–90, 46 L.Ed.2d 542; *McClellan v. Carland*, 217 U.S. 268, 30 S.Ct. 501, 54 L.Ed. 762, but the "unjustified wast[ing] of scarce judicial resources" has often been an important factor in deciding whether to allow interlocutory appeals. *Firestone Tire & Rubber Co. v. Risjord*, 449 U.S. 368, 378, 101 S.Ct. 669, 675, 66 L.Ed.2d 571; see also *Randle v. Victor Welding Supply Co.*, 664 F.2d 1064 (7th Cir. 1981). In this case, if the district court decision to deny a stay is not reviewed, the federal courts in Chicago and state courts in New York will march through an identical sequence of pre-trial discovery and motions, trials, and appeals, until the judgment of one set of courts becomes final and binding on the other by *res judicata*. The district court and MCS have stated that discovery in the two cases could be shared, and that other economies of scale may alleviate some of the wasteful duplication. But the economies of scale benefit only the parties (if anyone), not the judges and their staffs. The latter see each case uniquely and must hear evidence and arguments on each point raised throughout the course of the litigation, no matter how routine it becomes for counsel. Our own estimate is that the unjustified waste could be tremendous and certainly more than offsets the inconveniences of allowing an interlocutory appeal.[3]

2. This issue had been raised but could not be decided in *Central Soya Co., Inc. v. Voktas, Inc.*, 661 F.2d 78, 80 n. 6 (7th Cir. 1981) because defendants there did not follow the requisite notice of appeal provisions.

3. Judge Doyle's dissent argues that "over the years" we will find the burden of unnecessary interlocutory appeals to outweigh the "occasional gaffes" of district judges. If so, of course, this Court will be free to reconsider today's decision. "The success for which we hope is that we shall attain some rule which further experience will not force us to repeal." 4 The New Elements of Mathematics by Charles S. Peirce at xiii (C. Eisele ed. 1976). But "[h]owever much we may codify the law into a series of seemingly self-sufficient propositions, those propositions will be but a phase in a continuous growth." O. W. Holmes, The Common Law 32 (M. Howe ed. 1963).

Another practical matter that counsels in favor of allowing the appeal is that there has been considerable disagreement among the district courts of this Circuit regarding when proceedings should be stayed in deference to parallel state proceedings. Compare the district court decision below, *Browning v. United States Movidyn Corp.*, 83 F.R.D. 211 (E.D.Wis.1979), and *Gentron Corp. v. H. C. Johnson Agencies, Inc.*, 79 F.R.D. 415 (E.D.Wis.1978) with *Evans Transportation Co. v. Scullin Steel Co.*, 530 F.Supp. 787 (N.D.Ill.1982) and *Burrows v. Sebastian*, 448 F.Supp. 51 (N.D.Ill.1978). Presumably the confusion stems from this Court's failure previously to supply any guidance on the subject.

Historically, depending on the character of the underlying dispute and the putative basis for the stay, an order granting or denying a stay could be appealed as an order granting or denying an injunction. "The power to stay proceedings in another court appertains distinctively to equity in the enforcement of equitable principles, and the grant or refusal of such a stay by a court of equity of proceedings at law is a grant or refusal of an injunction within the meaning of § 129 [the predecessor to Section 1292(a)(1)]. And, in this aspect, it makes no difference that the two cases, the suit in equity for an injunction and the action at law in which proceedings are stayed, are both pending in the same court * * *." *Enelow v. New York Life Ins. Co.*, 293 U.S. 379, 382, 55 S.Ct. 310, 311, 79 L.Ed. 440. The historical "Enelow-Ettelson" rule has outlived the fine distinctions between law and equity, but has been retained nevertheless and used, for example, to decide appealability from the grant or denial of a stay pending arbitration. *Whyte v. THinc Consulting Group Int'l*, 659 F.2d 817 (7th Cir. 1981).

Under the so-called "Enelow-Ettelson" rule, the question whether an order granting or refusing a stay of judicial proceedings pending arbitration is one "granting or refusing * * * an injunction" within the meaning of 28 U.S.C. § 1292(a)(1) turns on whether the underlying cause of action is one which before the merger of law and equity was by its nature at law or in equity. * * * If the underlying action is at law, the order is appealable on the reasoning that it is analogous to an equitable restraint of legal proceedings. * * * Where, however, * * * the underlying action is itself equitable, the order is not appealable because it is merely an order by a court of equity concerning the management of its own proceedings.

*Id.* at 818–819 (citations and footnotes omitted); see also *Ceres Marine Terminals, Inc. v. International Longshoremen's Association*, 683 F.2d 242 (7th Cir. 1982).

When the rule is stated in its most general form, there is also a second requirement for appellate jurisdiction. Not only (1) must "the litigation in which the order is entered * * * be legal rather than equitable in character," but also (2) "the stay must have been sought to enable the prior determination of an equitable defense." *Lee v. Ply*Gem Industries, Inc.*, 593 F.2d 1266, 1268 (D.C.Cir.1979) (footnotes omitted), certiorari denied, 441 U.S. 967; 9 Moore's Federal Practice ¶ 110.20[3] at 242 (1982). Since arbitration has long been deemed to be an equitable defense, see, *e.g., Shanferoke Coal & Supply Corp. v. Westchester Service Corp.*, 293 U.S. 449, 55 S.Ct. 313, 79 L.Ed. 583, the second requirement is always satisfied in cases involving stays sought pending arbitration. Similarly, when the Enelow-Ettelson rule is applied to orders denying stays requested pending action by administrative agencies, the agency proceedings have sometimes been regarded as an equitable defense. See, *e.g., H. W. Caldwell & Son, Inc. v. United States for John Moon & Sons, Inc.*, 407 F.2d 21, 22 (5th Cir. 1969); *Deaktor v. L. D. Schreiber & Co.*, 479 F.2d 529 (7th Cir. 1973) (allowing interlocutory appeal from denial of a stay pending the exercise of primary jurisdiction by the Commodity Exchange Commission), reversed on the merits, 414 U.S. 113, 94 S.Ct. 466, 38 L.Ed.2d 344.

The underlying action here is clearly legal in nature. The dispute involves a

breach of contract, and the remaining allegations are incidental to the contract.[4] Moreover, the stay was requested to interpose an equitable defense. The substantive, equitable basis for issuance of the stay (by either the Common Law or modern reasoning) is the unnecessary and wasteful duplication of lawsuits. "Equity will interfere to restrain proceedings at law upon a bill in the nature of a bill of peace, whose object is to restrain useless and vexatious litigation and to prevent a multiplicity of suits." 1 High on Injunctions § 61 (4th ed. 1905).[5] The Supreme Court has similarly indicated that the control of duplicative litigation pending in two federal courts is a matter for equitable discretion. *Kerotest*

*Manufacturing Co. v. C-O-Two Fire Equipment Co.*, 342 U.S. 180, 183, 72 S.Ct. 219, 221, 96 L.Ed. 200. "Wise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation, does not counsel rigid mechanical solution of such problems. The factors relevant to wise administration here are equitable in nature." *Id.*

Thus the denial of a stay such as the one in this case comes within the Enelow-Ettelson definition of the denial of an injunction, and for the practical reasons set out above, we treat the stay as an injunction for purposes of Section 1292(a)(1) and assume jurisdiction over the appeal.[6]

**4.** In its complaint before the district court, MCS alleged violations of the Illinois Consumer Fraud and Deceptive Business Practices Act, Ill.Rev.Stat. ch. 121½, §§ 261 *et seq.*, and requested a declaration that the contractual limitations on damages are "void and unenforceable." These do not affect the legal nature of the complaint; the Illinois Act only codifies MCS's legal claim for misrepresentation and the dispute over damages concerns only the legal consequences following breach of contract.

**5.** The corresponding Common Law legal remedy, an action to consolidate, presumably would be unavailable as between federal and state courts.

**6.** The Tenth Circuit decided in *State Farm Mutual Automobile Ins. Co. v. Scholes*, 601 F.2d 1151 (10th Cir. 1979) that dismissal of an action without prejudice (treated by two members of the panel as equivalent to a stay) pending completion of state court proceedings could be reviewed only by writ of mandamus. We are not creating a conflict with the Tenth Circuit because this case considers appealability of the denial rather than the granting of a stay, and a conflict regarding appealability of a granted stay was already present under *Drexler v. Southwest Dubois School Corp.*, 504 F.2d 836, 838 (7th Cir. 1974) (*en banc*). Nevertheless, 9 Moore's Federal Practice ¶ 110.20[4.–2] and 16 C. Wright, A. Miller, E. Cooper & E. Gressman, Federal Practice and Procedure § 3923 similarly favor limiting appellate review of grants or refusals of a stay to writs of mandamus and questions certified by the district court pursuant to 28 U.S.C. § 1292(b). Although these authorities state that they are concerned with judicial efficiency, for the reasons given in the text we believe that efficiency will be best served in this case by allowing the appeal. The Tenth Circuit decision also states

that its mandamus-only approach is supported by the Supreme Court's recent decision in *Will v. Calvert Fire Ins. Co.*, 437 U.S. 655, 98 S.Ct. 2552, 57 L.Ed.2d 504. There the Supreme Court "granted certiorari to consider the propriety of the use of mandamus to review a District Court's decision to defer to concurrent state proceedings * * *." 437 U.S. at 657–658, 98 S.Ct. at 2554, 2555. Since the Court discussed the mandamus remedy alone and at length, and since it upheld the district court's exercise of discretion without measuring it against the lesser, "abuse of discretion" standard that might be applied on direct appeal, the Tenth Circuit held that there could be appellate jurisdiction "only by means of a petition for writ of mandamus, rather than by appeal." 601 F.2d at 1154. Indeed, Justice Rehnquist's plurality opinion rests firmly on the standard of review appropriate for mandamus and contrasts that stricter standard with review on direct appeal. See 437 U.S. at 661, 98 S.Ct. at 2556:

> The correct disposition of this case hinges in large part on the appropriate standard of inquiry to be employed by a court of appeals in determining whether to issue a writ of mandamus to a district court. On direct appeal, a court of appeals has broad authority to "modify, vacate, set aside or reverse" an order of a district court, and it may direct such further action on remand "as may be just under the circumstances." 28 U.S.C. § 2106. By contrast, under the All Writs Act, 28 U.S.C. § 1651(a), courts of appeals may issue a writ of mandamus only when "necessary or appropriate in aid of their respective jurisdictions." Whereas a simple showing of error may suffice to obtain a reversal on direct appeal, to issue a writ of mandamus under such circumstances "would undermine the settled limitations upon the power of an appellate court to review inter-

## II

The district court correctly noted in its order denying the stay that generally the federal courts have a "virtually unflagging obligation * * * to exercise the jurisdiction given them." *Colorado River Water Conservation District v. United States*, 424 U.S. 800, 817, 96 S.Ct. 1236, 1246, 47 L.Ed.2d 483. By itself, "the pendency of an action in the state court is no bar to proceedings concerning the same matter in the Federal court having jurisdiction * * *." *McClellan v. Carland*, 217 U.S. 268, 282, 30 S.Ct. 501, 504, 54 L.Ed. 762. On the other hand, "[i]t is equally well settled that a district court is 'under no compulsion to exercise that jurisdiction,' *Brillhart v. Excess Ins. Co.*, 316 U.S. 491, 494, 62 S.Ct. 1173, 1175, 86 L.Ed. 1620 (1942), where the controversy may be settled more expeditiously in the state court." *Will v. Calvert Fire Ins. Co.*, 437 U.S. 655, 662–663, 98 S.Ct. 2552, 2557, 57 L.Ed.2d 504. The many factors to be considered in deciding whether to postpone exercising jurisdiction make the decision, "in the last analysis, a matter committed to the district court's discretion." *Id.* at 664, 98 S.Ct. at 2558.

Despite the latitude that the district court has in these matters, under the particular facts of this case the stay should have been granted. We do not, however, mean to criticize the care with which the district court here reached its decision and again we note that the district courts of this Circuit have been in disagreement how their discretion is to be exercised.

There are several factors that warrant staying the present action pending the outcome of the New York action. First, there is no peculiarly "federal" interest that would make trying a copy of the case in federal court preferable to trying only the original in state court. For example, there are no federal questions at issue; jurisdiction is founded on diversity of citizenship and the law to be applied is exclusively state law. See *Evans Transportation Co. v. Scullin Steel Co.*, 530 F.Supp. 787, 788 (N.D. Ill.1982); *cf. Calvert Fire Ins. Co. v. American Mutual Reinsurance Co.*, 600 F.2d 1228, 1233 (7th Cir. 1979) ("There are * * * situations where a federal court may defer to a parallel state proceeding, even when the result will be to relegate decision of questions of federal law over which the district court has jurisdiction to a state forum."). The ordinary justification for having jurisdiction over diverse citizens is not present here either. MCS is an Illinois corporation and it escapes no bias against out-of-staters by filing its action in the federal court in Chicago. If MCS were concerned by prejudice in the New York state courts, it could have removed the state court action to a federal court in New York. Indeed, any interest MCS had in a federal forum could have been satisfied by removing the one action instead of creating a second. See *Burrows v. Sebastian*, 448 F.Supp. 51, 53 (N.D.Ill.1978).

locutory orders." *Will v. United States*, 389 U.S. 90, 98 n. 6, 88 S.Ct. 269, 275 n. 6, 19 L.Ed.2d 305 (1967).

And see 437 U.S. at 664, 98 S.Ct. at 2558. We think it of considerably more importance than did the Court of Appeals that *Colorado River* [, 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (allowing dismissal of federal court action in deference to state court proceedings) ] came before the Court of Appeals on appeal pursuant to 28 U.S.C. § 1291 following outright dismissal of the action by the District Court, rather than through an effort on the part of the federal-court plaintiff to seek mandamus.

Direct appeal is thus stated as an alternative to mandamus, and we do not read the opinion as limiting review to the latter. "[T]he District Court's exercise of its discretion may be subject to review and modification in a proper

interlocutory appeal, cf. *Landis* [*v. North American Co.*], 229 U.S. [248,] 256–259, 57 S.Ct. 163, 166–167, 81 L.Ed. 153 * * *." 437 U.S. at 665, 98 S.Ct. at 2558. In any event, the rule we adopt in this case probably would not have permitted an interlocutory appeal in *Will v. Calvert Fire Ins. Co.*, and therefore the Supreme Court's failure to weigh the district judge's actions according to the standards of an appeal is irrelevant. In *Will*, the underlying claims were essentially equitable—specific performance of a pool agreement on the one hand, and rescission of the agreement on the other. Hence the Enelow-Ettelson rule would not have allowed a direct appeal from the grant of the stay; the equity court was only keeping order within its own house.

MCS's Motion to Dismiss Appeal for Lack of Appellate Jurisdiction is hereby denied.

Second, the state court action was filed first and there is no indication that the New York state courts cannot fully and fairly resolve the parties' dispute. By proceeding at full tilt, the district court perhaps displays an attitude which is "potential[ly] abras[ive] of the spirit of federal/state comity * * *." *Ystueta v. Parris*, 486 F.Supp. 127, 129 (N.D.Ga.1980). The New York state courts will be adept at interpreting and applying New York law as provided for in the contract. "Gratuitous interference with the orderly and comprehensive disposition of a state court litigation should be avoided." *Brillhart v. Excess Ins. Co.*, 316 U.S. 491, 495, 62 S.Ct. 1173, 1175, 86 L.Ed. 1620. Since the first court to decide the dispute will bind the other, the maintenance of an extra action will have a perceptible effect upon proceedings in the original action if the parties there attempt to accelerate or stall the proceedings in order to influence which court finishes first. The result would be quite similar to forum shopping, and is just as unseemly.

Finally, as noted above, there would be a grand waste of efforts by both the courts and parties in litigating the same issues regarding the same contract in two forums at once. The two courts are geographically distant so that either there must be two sets of attorneys or else the attorneys will be forced to commute long distances. Since there is only one set of witnesses, they too will be forced to travel. Any advantage that the district court in Chicago has in interpreting the Illinois Consumer Fraud and Deceptive Practices Act is more than offset by the New York state court's advantage in applying New York law as called for under the contract. And even if there were less effort required to try the case in Illinois than New York, the former must be viewed as *additional* effort spent resolving the dispute because the New York court will not likely stay its proceedings in deference to the late-coming district court.

Therefore, the district court should have stayed its proceedings in deference to the first-filed state court action, and we remand for entry of an order granting the stay subject to any appropriate conditions added by the district court.[7]

JAMES E. DOYLE, Senior District Judge, dissenting.

I.

The key to today's decision is the view that "a grand waste of efforts by both the courts and parties in litigating the same issues regarding the same contract in two forums at once" is intolerable. Sympathetic vibrations stir in judicial breasts. Each state and federal judge lives with the tension between quantity and quality. It is desirable that in any one dispute, the need to resolve this tension be visited upon but one trial judge. When disputants make demand upon two trial courts to decide a single case, logic surely suggests that the phenomenon be met with some device to eliminate one of the trial courts from the field. Within the court system of each state government and within the court system of the national government, such devices have been developed.

Not sterile logic, however, but about 375 years of history have shaped the relationship between the courts of the states and the courts of the United States. When Congress established the United States trial courts and whenever it then conferred non-exclusive subject matter jurisdiction upon them, particularly diversity jurisdiction (in 1789), it created a potential for simultaneous resort to state and federal courts by parties to a single dispute. Conceivably, either Congress or the Supreme Court of the United States might have decided that whenever this phenomenon occurs, the national trial courts should defer to the state trial courts. Not at all. In general terms, the Supreme Court pronounced early what it has recently described as "the virtually unflagging obligation of the federal courts to exercise the jurisdiction given them." *Colorado River Water Cons. Dist. v. United*

---

**7.** For example, the district court should stand ready to end the stay in case the New York action is dismissed on appeal for ineffective service of process.

*States*, 424 U.S. 800, 817, 96 S.Ct. 1236, 1246, 47 L.Ed.2d 483 (1976). In more specific terms, the Court adopted the rule that "the pendency of an action in the state court is no bar to proceedings concerning the same matter in the Federal court having jurisdiction." *McClellan v. Carland*, 217 U.S. 268, 282, 30 S.Ct. 501, 504, 54 L.Ed. 762 (1910). The values served by the creation and exercise of jurisdiction in the national courts were thought so significant as to render tolerable, not intolerable, the occasional waste of judicial resources arising from duplication of effort.

But, of course, there is more to the story. It has been impossible to ignore the practical problem of such waste, however infrequent. In *Brillhart v. Excess Ins. Co.*, 316 U.S. 491, 62 S.Ct. 1173, 86 L.Ed. 1620 (1942), the Court upheld a federal district court's dismissal of a diversity suit for a declaratory judgment because of the pendency in a state court of a suit between the same parties and involving the same subject matter. The "virtually" unflagging duty to exercise jurisdiction was revealed as less than absolute. The district court was "under no compulsion to exercise that jurisdiction." *Id.* at 494, 62 S.Ct. at 1175. In *Colorado River Water Cons. Dist. v. United States*, in which the "virtually unflagging duty" was so heavily underscored, it was held that the circumstances there present were sufficiently special to permit affirmance of a federal district court's discretionary choice to dismiss an action in deference to related state court litigation. And in *Will v. Calvert Fire Ins. Co.*, 437 U.S. 655, 98 S.Ct. 2552, 57 L.Ed.2d 504 (1978), it was held on a petition for mandamus that the right of the plaintiff in a federal court action to an adjudication in that forum, without regard to the concurrent state court proceedings, was not so "clear and indisputable" as to require the appellate court to limit the district court's range of discretion and to command it to proceed to that adjudication on the merits. *Id.*, at 662, 98 S.Ct. at 2557.

The division within the Court in *Will v. Calvert Fire Ins. Co.* was such that the rule of *Colorado River Cons. Dist.* remains in full force: only in exceptional circumstances is a federal district court free to stay an action because the same dispute is the subject of a state court proceeding (although the circumstances need not be quite so exceptional as the dissenters in *Calvert Fire Ins. Co.* would prefer). *See* 17 WRIGHT, MILLER, AND COOPER, FEDERAL PRACTICE AND PROCEDURE § 4247 (1978 & Supp.1982); 1A MOORE'S FEDERAL PRACTICE § 0.203[4] (2d ed. 1982 & Supp.1982).

Today's decision in this court turns on its head this thread of history and controlling authority. Had the district court here granted defendant Ontel's motion to stay, we might now be engaged in deciding whether the circumstances are sufficiently exceptional, as compared with those present in *Colorado River Cons. Dist.*, to free the district court to take this rather bold step. But this district court denied the stay. So the question is whether the district court was free to exercise its discretion in a conservative manner, to move in the mainstream, obedient to its virtually unflagging obligation to exercise its jurisdiction. The most recent utterance of the Supreme Court is "that a district court should exercise its discretion with [its virtually unflagging obligation to exercise its jurisdiction] in mind, but ... that the decision whether to defer to the concurrent jurisdiction of a state court is, in the last analysis, a matter committed to the district court's discretion." *Will v. Calvert Fire Ins. Co., supra*, 437 U.S. at 664, 98 S.Ct. at 2558.

The enterprise to which appellant Ontel bids us is radical. Describing this as a case of first impression here, the majority puts the question as "whether a district court is ever *required* to stay its proceedings pending the resolution of identical proceedings in a state court." (Emphasis added.) To answer yes is to effect a substantive change in the distribution of power between the national court system and the court systems of the states. If it were necessary to give answer today, mine would be no. But it is not necessary. The circumstances of some future case may be so truly exceptional— yet more truly exceptional than those

present in *Brillhart, Colorado River*, and *Will v. Calvert*—as to compel an answer. In the case before us, the time for removal in New York had passed, the federal court plaintiff is the defendant (not the plaintiff) in the earlier-filed state court action; the state within which the particular federal district court sits is the state of which plaintiff is a citizen; there is no clear balance of convenience; and both the law of New York and the law of Illinois appear to be implicated. A number of meritorious considerations favor the New York state court as the forum, to be sure, perhaps enough to have persuaded the federal district court to test its tenuous freedom to refrain from exercising its jurisdiction. But this distinctly unexceptional case fails miserably as the occasion for the pronouncement of a new limitation upon the power of the national courts.

## II.

It is the concern expressed in part I which prompts this dissent. However, even in the absence of a curtailment of federal jurisdiction, acquiescence in this appellate intrusion would be difficult. For example, even if the facts were about as they are but two federal district courts were involved and we were reviewing an exercise of discretion without jurisdictional implications, appellate restraint would be the wiser course.[1] Neither fundamental rights nor an interpretation of constitutional or statutory language would be involved. The waste found intolerable in the majority opinion is the kind of practical problem better left to the district courts. A measure of serenity in the face of occasional gaffes by district judges is in order as contrasted with involvement of courts of appeals in weighing assortments of strictly prudential factors. It is neither desirable nor possible to formulate a balancing rule for every contingency which may arise in efforts to conserve judicial resources.

## III.

All this assumes that appellate jurisdiction is present under 28 U.S.C. § 1292(a)(1). On this point, the majority opinion confronts with admirable forthrightness the many obstacles to its assertion of jurisdiction. This forthrightness falters in three respects.

A. "When the ['Enelow-Ettelson'] rule is stated in its most general form," the majority acknowledges, one of its forks is that the stay must have been sought to enable the prior determination of an equitable defense. *Lee v. Ply*Gem Industries, Inc.*, 593 F.2d 1266, 1268 (D.C.Cir.1979), *cert. denied*, 441 U.S. 967, 99 S.Ct. 2417, 60 L.Ed.2d 1073 (1979). Appearing to accept this most general form of the rule, the majority decides that its requirements have been met and that the stay was indeed sought here to enable such a prior determination. Appellant Ontel has expressly disowned the contention that the requirements of the Enelow-Ettelson rule have been met. Ontel seeks a stay not to engage in arbitration or to obtain a ruling from an administrative agency or for any comparable purpose, but simply to proceed to judgment in its conventional lawsuit in a New York state court for money due on a contract. It is true that the decision whether to grant a stay is itself an exercise in equity, but in this case Ontel claims no equitable defense the determination of which would be rendered possible by a stay.

B. In the course of its invocation of practical reasons, the majority estimates that in the absence of a stay "the unjustified waste could be tremendous and certainly more than offsets the inconveniences of allowing an interlocutory appeal." Viewed solely within the confines of this very case, a successful interlocutory appeal may result in the expenditure of less federal judicial time in total than that which would be expended in the absence of a stay, although this is by no means clear in light of the uncertain duration of any specific civil suit.

---

1. A flat, universal rule within the federal court system—such as automatic deference to the court in which the action was commenced the

earlier—would do the trick, but probably too crudely.

The point is, however, that the question cannot be viewed solely within the confines of a single case in which an appellate court decides that a district court did err in denying a stay and then proceeds to order a stay. Unless we assume that district courts will err, and err clearly, more often than not when they deny stays, the aggregate effect of interlocutory appeals over the years will be to increase in some degree the demands upon federal appellate judicial resources and to decrease in some lesser degree the demands upon federal trial court resources.

C. A practical consideration raised by the majority is the need to eliminate, or at least to diminish, what is described as considerable disagreement and confusion among the district courts in the circuit regarding when they should grant stays in deference to state court proceedings. Enjoyment of discretion is enjoyment of choice. It is inherent in the enjoyment of choice by district courts that in a batch of virtually identical cases, except for the identities of the parties and the particular times and places in question, some district courts will proceed to consider all the appropriate factors and then grant stays while others will proceed to consider all the appropriate factors (as the majority agrees the district court did here) and then deny stays. Whether toleration of such disparate results is a badge of vice or virtue in a judicial system depends upon the proper application of the principle of division of labor. Some subjects are better left to trial courts, some are not. On balance, I would conclude that the denial of stays in these situations is an administrative, managerial matter better left to trial courts. I would construe § 1292(a)(1) not to grant the right of appeal from a denial of a stay when the stay is sought because of the pendency of similar proceedings in a state court.