**ARCHITECTURAL FLOOR PRODUCTS COMPANY, Plaintiff-counterdefendant,**

v.

**DON BRANN & ASSOCIATES, INC., Defendant-counterplaintiff,**

and

**Don Brann, Defendant.**

No. 81 C 5515.

United States District Court, N.D. Illinois, E.D.

Oct. 26, 1982.

Eric A. Oesterle, Alan S. Gilbert, Sonnenschein, Carlin, Nath & Rosenthan, Chicago, Ill., for plaintiff-counterdefendant.

Thomas J. McCracken, Jr., McCracken & Walsh, Chicago, Ill., for defendant-counterplaintiff.

## MEMORANDUM OPINION AND ORDER

GETZENDANNER, District Judge:

Architectural Floor Products Company ("Architectural") is an Illinois corporation engaged in the business of importing floor and wall coverings. Don Brann & Associates, a Michigan corporation, has acted in the past as a distributor of Architectural's products. Don Brann is president of the corporation that bears his name. (Both Brann and his corporation will be referred to hereafter as "Brann.").

Presently before the court is Brann's motion to stay proceedings on Count I of Architectural's amended complaint, pending the outcome of a state suit previously filed by Brann. Brann has also moved to reconsider my previous decision granting Architectural summary judgment on Count II of the amended complaint. Architectural has moved for entry of final judgment on Count II. For the reasons to follow, all three motions are denied.

### I

On February 5, 1976, Architectural appointed Brann its distributor in lower Michigan of "Tarkett sheet vinyl flooring and wall covering products." (Amended Complaint, Ex. A). The letter agreement executed by the parties stated that it was "cancellable by either party by giving the other party a 90 day notice in writing." (*Id.*) Over a year later, on May 15, 1977, Architectural further agreed in a separate contract to grant Brann an exclusive license to promote and sell a product known as "Court-Flor" throughout the state of Michigan. This contract also contained a termination clause specifying, in part, a 90 day notice period.

On August 12, 1981 Architectural notified Brann of its intent to terminate both the 1976 and the 1977 agreements in 90 days. Brann responded by filing suit in Michigan state court on September 2, 1981 seeking a declaratory judgment that the purported cancellation of the 1976 contract was invalid. Brann also sued two former employees, Anthony Britsky and Kristina Gates, both

citizens of Michigan. In this part of its complaint, Brann alleged that Architectural, Britsky and Gates had conspired to interfere with the advantageous business relationship previously existing between Brann and Architectural. Such conspiratorial activity on the part of Britsky and Gates was further claimed to be in breach of the fiduciary obligations they owed Brann.

Settlement negotiations were then on-going, however, and Brann's Michigan counsel decided not to serve Architectural. He reasoned that "service of the Complaint may have had an adverse impact on the settlement negotiations." (Plunkett Aff. at ¶ 2). Service was eventually accomplished on November 4, 1981.

In the meantime, Architectural filed its own suit in this court on October 1, 1981. Count I seeks a declaratory judgment that Architectural's terminations of both contracts were proper. Count II (added by amendment) involves allegations that Brann failed to pay for various goods received. Jurisdiction over both counts exists solely by virtue of diversity.

Up until this time, the parties have litigated the present suit in the normal course. Brann moved initially to dismiss the action for want of proper service. This motion was denied on February 22, 1982. Brann then filed an answer containing both affirmative defenses and a counterclaim. The counterclaim was dismissed on Architectural's motion on April 28, 1982.[1] Architectural next moved for summary judgment on count II, receiving a decision in its favor for $38,179.64 on September 7, 1982. During this period, Architectural also submitted numerous interrogatories, many concerning the termination issue. Brann responded on August 16. Amended responses were filed on August 23 and September 27.

By contrast, little seems to have gone on in the state suit. Architectural had not even answered Brann's complaint when the instant motion to stay was filed. (Rashid Aff. at ¶ 2). Moreover, Brann did not file until May 5, 1982 a default or an affidavit of default. (Plunkett Aff. at ¶ 6). Both are prerequisites, under Michigan law, for the entry of a default judgment. (Plunkett Supp. Aff. at ¶ 6). Brann also did not inform Architectural of the above filings until September 8, 1982—after Architectural had already filed its brief in opposition to the motion to stay. (Rashid Supp. Aff. at ¶ 2). Brann claims that no greater notice was required under the circumstances. (Plunkett Supp. Aff. at ¶¶ 5–6). This may be so, but it hardly appears that Brann has moved with dispatch in prosecuting its state suit.[2] A trial date of December 16, 1982 is currently set (letter of September 22, 1982 to the court from Alan S. Gilbert, attorney for Architectural),[3] but no discovery has yet gone forth. (Rashid Aff. at ¶ 3). I am more than a little dubious whether the parties will be prepared for trial by December 16.

## II

Brann's argument for a stay is simple: judicial resources will be wasted if both this court and the Michigan court proceed to adjudicate the same dispute between the parties. Brann relies heavily on the Seventh Circuit's recent decision in *Microsoftware Computer Systems v. Ontel Corp.*, 686 F.2d 531 (7th Cir.1982) (hereafter cited as *Ontel*).

In *Ontel* the Court held, in apparently unprecedented fashion, that a district court had abused its discretion by failing to "stay its proceedings pending the resolution of

---

1. In my order of April 28, I granted Brann leave to file an amended counterclaim within 30 days. Brann did not file until August 18, 1982. It justified its tardiness in an accompanying memorandum asking for an order excusing its late filing. Architectural has since consented.

2. Brann obtained a preliminary injunction from the state court (on issues relatively peripheral to the question of Architectural's right to termi-

nate) as a result of a hearing held on December 16, 1981. Brann attempted to enforce this order by filing a counterclaim in *this* court. *See* Mem. Op. & Order of April 28, 1982 dismissing the counterclaim.

3. Brann's motion for entry of default judgment was denied on September 22, 1982. (Letter of 9/22/82 to the court from Alan S. Gilbert, attorney for Architectural).

identical proceedings in a state court." *Id.* at 533. Ontel, a New York corporation, sued Microsoftware, an Illinois corporation, in New York state court on December 15, 1980 alleging that Microsoftware owed it money for goods delivered under the terms of a contract. Microsoftware responded by suing Ontel in federal district court in Chicago. Relying solely on diversity jurisdiction, Microsoftware pleaded various causes of action (e.g., breach of warranty and breach of contract) all connected with the sale of goods at issue in the New York state suit. Less than a month later, Ontel moved for a stay pending the outcome of its prior state suit. Judge Hoffman agreed that both suits presented "substantially identical" issues, but nevertheless denied the stay. He did not see sufficient reason to shirk his "virtually unflagging obligation ... to exercise the jurisdiction given [him]." *Colorado River Water Conservation District v. United States,* 424 U.S. 800, 817, 96 S.Ct. 1236, 1246, 47 L.Ed.2d 483 (1976) (hereafter cited as *Colorado River*). Over a vigorous dissent, the Court of Appeals reversed, holding that "under the particular facts of this case the stay should have been granted." *Ontel, supra,* 686 F.2d at 537.

■ *Ontel* does not govern this case. As the statement just quoted reveals, the decision must be read in context; *Ontel* is not a case of wide-application. *See Voktas, Inc. v. Central Soya Company, Inc.,* 689 F.2d 103 at 105 (7th Cir.1982). Indeed, the present situation is far different. In *Ontel,* no federal interest was served by resolving the parties' dispute in federal court. No federal questions were presented, and even the traditional rationale for diversity jurisdiction—the prevention of bias against out-of-staters—could not be invoked: "If [Microsoftware] were concerned by prejudice in the New York state courts, it could have removed the state court action to a federal court in New York. Indeed, any interest

[Microsoftware] had in a federal forum could have been satisfied by removing the one action instead of creating a second." *Ontel, supra,* 686 F.2d at 537. The same is simply not true here. Architectural could not have removed Brann's initial state suit for the simple reason that this action was not within the original jurisdiction of the federal courts; the presence of Britsky and Gates, both Michigan citizens, on the defendants' side of the ledger foreclosed any arguments based on diversity. Thus, the general federal interest underlying the diversity grant can be served in this dispute only by allowing Architectural's federal suit to proceed. This does not mean, of course, that stays are per se improper under these circumstances. *See Bio-Analytical Services v. Edgewater Hospital,* 565 F.2d 450, 454 (7th Cir.1977), *cert. denied,* 439 U.S. 820, 99 S.Ct. 84, 58 L.Ed.2d 111 (1978). Stays are potentially appropriate even when federal questions are involved. *Colorado River, supra; Calvert Fire Ins. Co. v. Am. Mut. Reinsurance Co.,* 600 F.2d 1228 (7th Cir. 1979). I hold simply that, on these facts, a stay is not, as it was in *Ontel,* "required."

### III

It remains to be determined whether a stay would nevertheless be "appropriate." Architectural, citing *Colorado River, supra,* 424 U.S. at 818, 96 S.Ct. at 1246, argues that "exceptional" circumstances must be present whenever a stay is ordered. It is far from clear, however, whether the *Colorado River* test must be met in this case, for all that count I seeks to adjudicate is a claim for declaratory relief under diversity jurisdiction. The various opinions of the Court in *Will v. Calvert Fire Ins. Co.,* 437 U.S. 655, 98 S.Ct. 2552, 57 L.Ed.2d 504 (1978), suggest that in suits of this nature, the decision whether to stay "is largely committed to the discretion of the district court." *Id.* at 664, 98 S.Ct. at 2558 (plurality opinion).[4]

---

4. Justice Rehnquist's plurality opinion, joined by three other Justices, indicates that stays are solely a matter of discretion, even in federal question litigation. The "unflagging obliga-

tion" to exercise jurisdiction properly invoked, so heavily stressed in *Colorado River,* is, under Justice Rehnquist's analysis, merely one factor to be considered by a district court in the exer-

Even if this more expansive approach is proper, Brann's motion must be denied. The crucial factor is the present status of the respective lawsuits. Much has gone on here, while very little seems to have transpired in Michigan. To issue a stay under these circumstances makes absolutely no sense. Deference to previously filed state actions, outside the context of the traditional abstention categories, is justified by "considerations of '[w]ise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation.'" *Colorado River, supra,* 424 U.S. at 817, 96 S.Ct. at 1246 (quoting *Kerotest Mfg. Co. v. C–O–Two Fire Equipment Co.,* 342 U.S. 180, 183, 72 S.Ct. 219, 221, 96 L.Ed. 200 (1952)). Clearly, these concepts would not be advanced by remitting the parties to Michigan, where they would undoubtedly have to retrace steps already taken here. As Professor Moore points out, "if a state proceeding has been filed as a savings or protective action and is not being pursued actively, a stay or dismissal of a federal action would be inappropriate." 1A Moore's Federal Practice, ¶ 0.203[4], p. 2141 (2d ed.1981).[5]

Considerations of "wise judicial administration" counsel against a stay for a second reason as well. Judging from the face of its complaint, Brann has not challenged in Michigan Architectural's termination of the 1977 agreement. By allowing Architectural's federal suit to proceed, it will thus be possible to resolve in one forum all the issues surrounding both the 1976 and the 1977 contracts. Granting a stay, by contrast, would result in piece-meal litigation, hardly a factor in Brann's favor. *Colorado River, supra,* 424 U.S. at 818, 96 S.Ct. at 1246.

Furthermore, there is nothing to suggest that Architectural's federal suit is "vexatious" in the sense that it was brought solely to delay the state proceedings. *Compare Calvert Fire Ins. Co. v. Am. Mut. Reinsurance Co., supra.* Architectural did not even know it had been sued in Michigan when the federal suit was filed. For the same reason, I attach little weight to the fact that Brann technically beat Architectural to the courthouse by 29 days.

The parties' dispute also does not revolve around claims to a particular *res.* The con-

---

cise of its discretion. *Will v. Calvert Fire Ins. Co., supra,* 437 U.S. at 664, 98 S.Ct. at 2558. Justice Blackmun, concurring in the judgment, and Justice Brennan, dissenting (and joined by three others), took issue with Justice Rehnquist's watered-down reading of *Colorado River. Id.* at 667, 98 S.Ct. at 2559 (Blackmun, J.); *id.* at 668–73, 98 S.Ct. at 2559–2562 (Brennan, J.). Both Justices conceded that Justice Rehnquist's permissive standard was correct, under *Brillhart v. Excess Ins. Co.,* 316 U.S. 491, 62 S.Ct. 1173, 86 L.Ed. 1620 (1942), in the diversity-declaratory judgment context, but neither Justice agreed that *Brillhart* had any relevance in the federal question realm. *See Calvert Fire Ins. Co. v. Will,* 586 F.2d 12, 13–14 (7th Cir. 1978) (on remand).

Justice Brennan elaborated on the reasons for this distinction:

As is readily apparent, crucial to this Court's approval of the District Court's dismissal of the suit in *Brillhart* were two factors absent here. First, because the federal suit was founded on diversity, state rather than federal law would govern the outcome of the federal suit. Second, and more significantly, the federal suit was for a declaratory judgment. Under the terms of the provision empowering federal courts to entertain declaratory judgment suits, 28 U.S.C. § 2201, the assumption of jurisdiction over such suits is discretion-

ary: "In a case of actual controversy within its jurisdiction ... any court of the United States, upon the filing of an appropriate pleading, *may* declare the rights and other legal relations of any interested party seeking such declaration ...." (Emphasis added.) It was primarily because federal jurisdiction over declaratory judgment suits is discretionary that *Brillhart* found the District Court's deference to state-court proceedings permissible.

*Will v. Calvert Fire Ins. Co., supra,* 437 U.S. at 671–72, 98 S.Ct. at 2561–62 (dissenting opinion).

Just recently, the Seventh Circuit utilized the "exceptional circumstances" test in an appeal arising out of a diversity suit. *Voktas, Inc. v. Central Soya Company, Inc.,* 689 F.2d 103 (7th Cir.1982). The plaintiff in *Voktas* sought damages, not declaratory relief.

5. The dormancy of Brann's state suit further indicates that proceedings in this court will not result in "[g]ratuitous interference with the orderly and comprehensive disposition of a state court litigation." *Brillhart v. Excess Ins. Co.,* 316 U.S. 491, 495, 62 S.Ct. 1173, 1175, 86 L.Ed. 1620 (1942). Concerns of comity are not threatened by my decision.

cerns that motivated the Supreme Court's affirmance of the stay in *Colorado River* are therefore not present. Nor has Brann made any credible showing that this court is an inconvenient forum. Brann litigated here for over 10 months without complaint before bringing its motion.[6] Issues of Illinois law are also present.[7] The motion to stay is denied.

## IV

Brann's motion to reconsider the grant of summary judgment on Count II is also without merit. Brann claims that the affidavit submitted in connection with its amended counterclaim, *see* note 1, *supra,* raises a material fact question, precluding the entry of summary judgment. The gist of Brann's affidavit (and its amended counterclaim) is that Architectural has failed to pay Brann the commissions it is due on various sales. Brann points out that these assertions directly contradict the statement made by William R. Morgan, Jr., Architectural's president, that "Architectural does not owe Brann Associates any money." (Morgan Aff. at ¶ 10).

■ Brann, however, has made no showing as to why this factual dispute is material to Brann's liability for the goods described in Count II. The transactions which are disputed in the counterclaim are wholly distinct from those complained about in Count II. Brann's liability under Count II is clear regardless of whether paragraph ten of the Morgan affidavit is accurate.

## V

Architectural has asked that judgment on Count II be made final. Federal Rule 54(b) provides in pertinent part:

When more than one claim for relief is presented in an action ... the court may direct the entry of a final judgment as to one or more but fewer than all of the claims ... only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment.

■ The effects of a certification pursuant to Rule 54(b) are varied and significant:

The entry of a final judgment has a number of important consequences. Ordinarily it is only from a final judgment that an appeal may be prosecuted under 28 U.S.C. § 1291. Indeed, the principal purpose of Civil Rule 54(b) is to permit piecemeal appeals "in the infrequent harsh case." Yet immediate appealability is obviously not the sole consequence of a final judgment. A judicial determination has no res judicata effect until it is embodied in a final judgment. Interest on an adjudicated claim for money generally only accumulates upon the entry of a final judgment. And perhaps most significantly for our purposes here, the process of collecting upon an adjudicated claim can only commence after a final judgment has been entered.

*Bank of Lincolnwood v. Federal Leasing, Inc.,* 622 F.2d 944, 949 n. 7 (7th Cir.1980) (citations omitted). In light of these serious consequences, requests under Rule 54(b) are granted neither routinely nor as a matter of course. *Curtiss-Wright Corp. v. General Elec. Co.,* 446 U.S. 1, 10, 100 S.Ct. 1460, 1466, 64 L.Ed.2d 1 (1980); *Local P–171 v. Thompson Farms Co.,* 642 F.2d 1065, 1071–72 (7th Cir.1981); *Coleman v. McLaren,* 92 F.R.D. 754, 756 (N.D.Ill.1981).

■ The decision in *Curtiss-Wright* indicates that two types of concerns are germane to the analysis: those of a "juridicial"

---

**6.** Counsel for Brann explained that the motion to stay was not brought sooner (i.e., before *Ontel* was decided) because prior "exhaustive research" had failed to turn up "definitive authority" in Brann's favor. (Plunkett Aff. at ¶ 4). Even before *Ontel,* however, there were numerous published opinions dealing with the issues presented here. The *Calvert Fire* litigation (in which a stay was ultimately affirmed)

itself generated three opinions in the Seventh Circuit and one in the Supreme Court. Brann's assertions do not justify its tardiness. *Cf. Engle v. Isaac,* —— U.S. ——, 102 S.Ct. 1558, 1574–75, 71 L.Ed.2d 783 (1982).

**7.** The 1977 agreement is to "be construed under the laws of the State of Illinois." (Amended Complaint, Ex. B, ¶ 15).

nature and those pertaining to the basic equities between the parties. To surmount the first hurdle, a certifying court must determine that the judgment under scrutiny is both "final" and "separate" from the claims remaining to be adjudicated. "Considerations of [these factors] is necessary to assure that application of the Rule effectively 'preserves the historic federal policy against piecemeal appeals.'" *Id.,* 446 U.S. at 8, 100 S.Ct. at 1464 (quoting *Sears, Roebuck & Co. v. Mackey,* 351 U.S. 427, 438, 76 S.Ct. 895, 901, 100 L.Ed. 1297 (1956)). This is so because the presence of the desired conditions insures that "there is no potential for a second appellate review of the same issue," *Local P–171 v. Thompson Farms Co., supra,* 642 F.2d at 1072, even if an appeal is later taken from a judgment disposing of the remaining claims. "Nor ... is there any possibility that the need for review might be mooted by future developments in the litigation." *Id.* (footnote omitted).

The requisite "juridicial" factors are present here. The judgment rendered on Count II is clearly "final" in the sense that it "ends the litigation on the merits [of Count II] and leaves nothing for the court to do but execute the judgment." *Catlin v. United States,* 324 U.S. 229, 233, 65 S.Ct. 631, 633, 89 L.Ed. 911 (1945). Moreover, Count II of Architectural's amended complaint is "separate," both legally and factually, from the remaining components of this litigation—Count I and Brann's amended

counterclaim. Count I places in issue the proper interpretation of the termination provisions found in the 1976 and 1977 agreements. By contrast, the only material dispute Brann raised in connection with Count II was whether it had received the proper credit for goods returned and whether it owed a two percent monthly service charge on amounts past due. These questions are also distinct from those raised by the pleadings submitted on the counterclaim, namely, whether the subject sales resulted from Brann's "specific sales efforts" and whether commissions are due on sales billed directly by Architectural to the ultimate purchaser. As noted before, the transactions involved in Count II and the counterclaim are different.[8]

■ Architectural's claim for relief fails, however, upon an examination of the equities. A movant under Rule 54(b) bears the burden of showing it will suffer unjust harm if final judgment is delayed pending resolution of the unadjudicated claims. *Curtiss-Wright Corp. v. General Electric Co., supra,* 446 U.S. at 9–10, 100 S.Ct. at 1465–1466; 6 *Moore's Federal Practice,* ¶ 54.41[3], pp. 743–44 (2d ed.1982).[9] Architectural has made no such showing. Instead, it has relied on dictum found in the *Bank of Lincolnwood* decision:

> When no substantial reason appears why a litigant should not be entitled to collect upon a claim adjudicated in its favor immediately, the appellate courts will sus-

---

**8.** Brann argues that there is an overlap between count II and the counterclaim because both turn on whether Architectural owes Brann money on past commissions. My determination that this question has no bearing on count II, *see* part IV, *supra,* fatally undercuts this argument.

**9.** Architectural claims that the Supreme Court rejected this standard in *Curtiss-Wright.* It did not. The Court held only that appellate courts may not reweigh the equities de novo:

> When Rule 54(b) was amended in 1946, the Notes of the Advisory Committee which accompanied the suggested amendment indicated that the entire lawsuit was generally the appropriate unit for appellate review, "and that this rule needed only the exercise of a discretionary power to afford a remedy in the infrequent harsh case to provide a

simple definite, workable rule." 5 F.R.D. 433, 473 (1946). *However accurate it may be as a description of cases qualifying for Rule 54(b) treatment,* the phrase "infrequent harsh case" in isolation is neither workable nor entirely reliable as a benchmark for *appellate review.* There is no indication it was ever intended by the drafters to function as such.

*Id.,* 446 U.S. at 9–10, 100 S.Ct. at 1465–1466 (emphasis added). Appellate review under *Curtiss-Wright* extends solely to a search for abuse of discretion. *Id.* at 10, 100 S.Ct. at 1466. Such discretion must be exercised, however, with regard for the principle that certification under Rule 54(b) is not granted routinely; the movant must establish some reason for departing from the norm.

tain the entry of judgment upon that claim by the trial court.

*Id.,* 622 F.2d at 951. In *Bank of Lincolnwood,* the district court made specific findings justifying the entry of judgment; the court found that if judgment were delayed, the plaintiff-Bank might never be paid, given the defendant's precarious financial posture. *Id.* at 949. The record created thus far by Architectural provides no basis for reaching a similar conclusion.[10]

It is also significant that Brann's pending counterclaim offers the possibility of a future set-off against the amounts Architectural now claims. As in *Curtiss-Wright,* this is "surely not an insignificant factor," *id.,* 446 U.S. at 12, 100 S.Ct. at 1467, to be weighed when considering the fairness of subjecting Brann to an immediately enforceable judgment.[11]

### VI

For the reasons stated, Brann's motion to stay Count I is denied, as is Brann's motion to reconsider the previous grant of summary judgment in Architectural's favor on Count II. Architectural's motion for entry of final judgment on Count II is denied without prejudice to Architectural's right to bring a renewed motion based on a fuller record.

It is so ordered.

---

**10.** Architectural remains free, of course, to supplement the record and file a renewed motion on this basis.

**11.** The presence of Brann's counterclaim further distinguishes this case from *Bank of Lincolnwood.* Counterclaims were also not present in *Local P–171 v. Thompson Farms Co., supra,* nor in *Coleman v. McLaren, supra.* The Rule 54(b) certifications entered in those cases can thus be distinguished in part as well.

˙ That the *Curtiss-Wright* Court upheld a certification in the face of pending counterclaims (for far greater amounts) is not dispositive. The district court there found that a delay in judgment would deprive the winning plaintiff of a substantial sum of money, due to the difference between the prevailing market and prejudgment rates of interest. No comparable showing has been made by Architectural.