**MORETRENCH AMERICAN CORPORATION, Plaintiff–Appellant,**

v.

**S.J. GROVES AND SONS COMPANY, et al., Defendants–Appellees.**

No. 87–1671.

United States Court of Appeals, Seventh Circuit.

Argued Jan. 11, 1988.

Decided Feb. 24, 1988.

Stanley J. Norton, Norton & Christensen, Goshen, N.Y., for plaintiff-appellant.

Paul W. Killian, Watt, Tieder, Killian & Hoffar, Vienna, Va., for defendants-appellees.

Before WOOD, POSNER, and KANNE, Circuit Judges.

POSNER, Circuit Judge.

Moretrench, a subcontractor on a project to repair a federally owned dam on the Mississippi River, brought suit under the Miller Act, 40 U.S.C. §§ 270a–270d, against its prime contractor, a joint venture named GAB. The district court stayed the suit, at GAB's request, pending resolution of certain disputes between GAB and the Corps of Engineers (the owner of the dam). Moretrench appeals from the stay. The first and only question we shall have to consider is our appellate jurisdiction.

When a subcontractor incurs an additional expense as a result of a change order issued by the owner, or some other change in circumstances for which the owner is responsible, the prime contractor, naturally, does not want to have to reimburse the subcontractor out of its own pocket, but instead wants the owner to bear the expense. To this end, the disputes clause in the contract between GAB and Moretrench provided that in the event of a dispute between the parties that involved the owner, Moretrench would be bound by the determination of responsibility made in accordance with the procedures set forth in the contract between GAB and the Corps of Engineers. That contract provided for initial determination by a federal contracting officer with a right of appeal to a board of contract appeals or to the United States Claims Court.

One of the disputes (and the subject of Count I of Moretrench's complaint) was over extended pumping. Moretrench, whose job in the project was to "dewater" the area behind a cofferdam, claimed that it had to keep pumping for 292 days beyond the term specified in its contract with GAB, and it sought additional payment for the extra days. GAB duly submitted the claim to the Corps, which acknowledged liability for 95 days at the specified contract price of $5,100 per day and remitted payment for them at that rate to GAB, which in turn paid Moretrench. Moretrench argues that GAB, not the Corps, was responsible for the other 197 days of extra pumping, and hence that the only remaining quarrel over the issue is between it (Moretrench) and GAB—a quarrel to which the pending proceeding in the Claims Court is irrelevant. However, GAB claims that not it but the Corps was responsible for the extra 197 days; that is one of the issues in litigation in the Claims Court.

In Count II of its complaint Moretrench seeks an additional payment of $664,000 for a work modification. The Corps' contracting officer allocated this amount to Moretrench, and it was paid over to GAB. But rather than remit the money to Moretrench, GAB has retained the money as a potential source of funds for satisfying its claims against the Corps arising out of the contract, and these claims too are pending in the Claims Court. Finally, Count III seeks $200,000 that the Corps allocated to Moretrench but then retained in order to offset overpayments that the Corps says it made to GAB under the contract. GAB denies that there were overpayments, and this is another issue in the Claims Court. (So Counts II and III involve mirror images: GAB retaining Moretrench's money in Count II, the Corps retaining Moretrench's money in Count III.) Moretrench argues forcefully that all three disputes are purely between GAB and the Corps, and that it is entitled to get its money now, without waiting years for the proceeding in the Claims Court to end. In so arguing, Moretrench relies on a provision in the disputes clause of the subcontract that nothing in that clause "shall be construed in any manner to affect Subcontractor's rights and remedies against the Contractor involving disputes or claims not solely due to the acts or omissions of the Owner."

The stay granted by the district court is, of course, an interlocutory order. It does not resolve Moretrench's lawsuit against GAB, but merely postpones proceedings in the suit until a final determination by the Claims Court of the claims that Moretrench submitted to GAB for presentation to the Corps of Engineers. In arguing that the stay is appealable even though it is interlocutory, Moretrench relies primarily on the *"Enelow–Ettelson"* doctrine, an obscure and disfavored doctrine of appellate jurisdiction, see *Olson v. Paine, Webber, Jackson & Curtis, Inc.*, 806 F.2d 731 (7th Cir.1986), which provides that if the judge in a suit at law grants a stay that is in furtherance of an equitable claim or defense, the stay is appealable immediately under 28 U.S.C. § 1292(a)(1) as a preliminary injunction. The threadbare reasoning that supports this result is that in 1891, when the predecessor to section 1292(a)(1) (which authorizes the immediate appeal of orders granting, denying, etc. preliminary injunctions) was first enacted, such a stay could have been issued only by a chancellor, and it is therefore in the nature of an injunction. It is doubtful that the historical analysis is correct, and unclear why it should survive the merger of law and equity; but that is neither here nor there, as *Enelow–Ettelson* is a Supreme Court doctrine that we concluded in *Olson* is still authoritative.

Moretrench's suit against GAB is a suit at law; it seeks damages for breach of contract. The fact that it also seeks a declaratory judgment is irrelevant. Although a suit which seeks both legal and equitable relief is deemed equitable for purposes of applying the *Enelow–Ettelson* doctrine unless the equitable relief sought is nominal (*Olson v. Paine, Webber, Jackson & Curtis, Inc., supra*, 806 F.2d at 737; *Medtronic, Inc. v. Intermedics, Inc.*, 725 F.2d 440, 443–46 (7th Cir.1984)), a request for declaratory relief is deemed neither legal nor equitable—a proper result, considering the confused lineage of declaratory judgments, on which see, e.g., *Petition of Kariher*, 284 Pa. 455, 464–65, 131 Atl. 265, 268 (1925); Sunderland, *A Modern Evolution in Remedial Rights—The Declaratory Judgment*, 16 Mich.L.Rev. 69 (1917); Borchard, *The Declaratory Judgment—A Needed Procedural Reform*, 28 Yale L.J. 105 (1918). Instead, the underlying relief sought determines the character of the suit. See, e.g., *Employers Insurance of Wausau v. Shell Oil Co.*, 820 F.2d 898, 900–01 (7th Cir.1987); *Mowbray v. Moseley, Hallgarten, Estabrook & Weeden, Inc.*, 795 F.2d 1111, 1114 (1st Cir.1986). Since declaratory judgments do not have a clear equitable pedigree—indeed, they did not exist in this country in the nineteenth century, although equivalent forms of relief could sometimes be achieved by other routes, some legal, some equitable—an attractive alternative would have been to classify them as legal for purposes of *Enelow–Ettelson* in order to cut down a bit on

the scope of that disfavored doctrine. But that course has not been followed; nor does Moretrench urge it upon us.

So the critical question is whether or not the stay sought and granted in this case is based on an equitable claim or defense. Not all stays are, of course; else one of the two elements of the *Enelow–Ettelson* doctrine (suit at *law, equity* stay) would be superfluous. In *Microsoftware Computer Systems, Inc. v. Ontel Corp.*, 686 F.2d 531, 536 (7th Cir.1982), this court held that a stay granted to spare the defendant from being harassed by multiple lawsuits is equitable for purposes of the *Enelow–Ettelson* doctrine. Two other circuits disagree, see *Mayacamas Corp. v. Gulfstream Aerospace Corp.*, 806 F.2d 928, 929–30 (9th Cir.1986), cert. granted, — U.S. —, 107 S.Ct. 2458, 95 L.Ed.2d 732 (1987); *Gold v. Johns–Manville Sales Corp.*, 723 F.2d 1068, 1073 (3d Cir.1983), as does the author of Note, *The Appealability of Federal Court Orders Denying Stays in Deference to Concurrent State Court Proceedings*, 59 Ind. L.J. 65, 71–73 (1983). *Mayacamas* remarks that "avoiding duplicative litigation is an equitable consideration, not an equitable defense"; the Note writer emphasizes the danger that under the reasoning of *Microsoftware* almost every stay would be appealable, so common a ground for granting a stay is the avoidance of unnecessary duplication. But these authorities may be reading *Microsoftware* too broadly. There is a difference, though a fine one in some cases, between a stay designed merely to avoid having to litigate the same claim in two different courts at the same time and a stay based on a claim that the plaintiff is harassing the defendant with a "vexatious multiplicity" of lawsuits. The latter claim is a recognized basis for equitable relief. See, e.g., *Medtronic, Inc. v. Intermedics, Inc., supra*, 725 F.2d at 442; *Harvey Aluminum, Inc. v. American Cyanamid Co.*, 203 F.2d 105, 108 (2d Cir.1953). One can bring an equity suit designed solely to obtain an injunction against such harassment. If instead of filing a separate suit one asks for a stay designed to obtain partial equitable relief, namely a cessation of the plaintiff's litiga-tion activities in the court in which the stay is sought, the stay is based on an equitable claim and is therefore an equity stay for purposes of *Enelow–Ettelson.*

We have no desire to interpret this discredited doctrine broadly, but it would be no service to the cause of reform to make arbitrary distinctions among types of equity claim or defense and allow only a subset to form the basis of stays appealable under section 1292(a)(1). Conceivably the panel in *Microsoftware* misconstrued a stay designed merely to avoid parallel litigation as one designed to protect the party seeking the stay from being harassed by multiple suits (although other cases have equated the two grounds of stay, notably *Crosley Corp. v. Hazeltine Corp.*, 122 F.2d 925, 929–30 (3d Cir.1941)); but, if so, that would not touch the principle of *Microsoftware*, which we shall continue to follow until told to do otherwise by higher authority.

So—to return at long last to the particulars of this suit—if Moretrench had sued GAB on the same claim in two courts, and one of the courts had stayed the case before it to spare GAB from being harassed by Moretrench, the stay would have been equitable in character, and hence immediately appealable if (as here) the suit sought to be stayed was an action at law. But that is not the character of the stay. Moretrench, as it is at pains to stress, is not a party to the proceeding in the Claims Court. Although in granting the stay on GAB's motion the district judge did mention the desirability of avoiding duplication of that proceeding, this, as we have just said, may not be enough to distinguish a "law" stay from an "equity" stay. More important, the idea behind the stay in this case was not that GAB should be spared from being harassed by parallel suits in different forums (they are not parallel), but that the subcontract with Moretrench makes the proceeding in the Claims Court a condition precedent to Moretrench's obtaining damages from GAB in the present suit. A stay based on a term of the parties' contract making some procedure a condition precedent to enforcing the contract is not per se equitable in character. It is

neither itself rooted in equity notions, as would be a stay designed to prevent the defendant from being harassed by a multiplicity of lawsuits, nor designed to allow the defendant to assert an equitable defense such as unclean hands.

The defense here is, in the first instance, simply a contract defense: that Moretrench is not entitled to be paid until the proceeding in the Claims Court is over and done with, even though some of the disputes between the parties that have given rise to the present lawsuit may be outside the scope of that proceeding. (Whether this is a sound or an unsound defense is *the* issue on the merits, which we cannot decide unless we have appellate jurisdiction.) Some contract defenses are equitable; in particular, where a contract provides that the parties will refer any dispute arising under it to arbitration, and the provision is used to obtain a stay of judicial proceedings pending the arbitration, the stay is deemed equitable. But this is because of the supposition, probably erroneous and certainly beside the point, see *Hayes v. Allstate Ins. Co.*, 722 F.2d 1332, 1339 (7th Cir.1983) (dissenting opinion), that in the nineteenth century a party to a contract containing an arbitration clause would have to go to an equity judge to get an order staying a suit on the contract pending arbitration. In fact one could not have gotten such a stay from *any* kind of judge, since executory contracts to arbitrate were unenforceable. But putting this aside, it still would not follow that all stays designed to allow the parties to proceed in another forum pursuant to contractual agreement are equitable.

The stay in this case is much like a stay granted because a plaintiff has failed to exhaust administrative remedies, or because the dispute is within the primary jurisdiction of an administrative agency. Indeed, the stay in this case may *be* such a stay rather than just an analogy to it—for is not the dispute process between the prime contractor and the Corps of Engineers, with appeal to a board of contract appeals or to the Claims Court, an administrative procedure that Moretrench must allow to be completed before it can obtain damages in court? Most cases hold that a stay pending completion of administrative proceedings is not equitable for purposes of the *Enelow–Ettelson* doctrine. See *Pepper v. Miani*, 734 F.2d 1420, 1421–22 (10th Cir.1984), and cases cited there; cf. *Texaco, Inc. v. Cottage Hill Operating Co.*, 709 F.2d 452 (7th Cir.1983).

*H.W. Caldwell & Son, Inc. v. United States for Use of John H. Moon & Sons, Inc.*, 407 F.2d 21, 22 (5th Cir.1969), on which Moretrench relies heavily, is to the contrary, and though outnumbered it is the only case that deals with the Miller Act itself—and we cited *Caldwell* in *Microsoftware*. The citation, however, is thoroughly noncommital ("agency proceedings have sometimes been regarded as an equitable defense," 686 F.2d at 535); and *Caldwell* itself gives no reasons for its conclusion. The court could have noted, but did not, the analogy between a stay for contractually specified arbitration and a stay for contractually specified administrative proceedings. However, while obliged not to disregard the *Enelow–Ettelson* doctrine, we are not obliged to extend it. Executory contracts to arbitrate were not enforceable in the nineteenth century, and the Supreme Court may have felt that therefore a stay of judicial proceedings because of the existence of such a contract would be so extraordinary a judicial measure as to require an injunction to effectuate. Whether or not this explanation makes any sense, it has no application to a stay based on a legal or contractual requirement of preliminary resort to administrative, not arbitral, machinery. It is a fine distinction that we are drawing but it is one already entrenched in the case law, and as we noted in discussing the *Microsoftware* decision the structure of the *Enelow–Ettelson* doctrine makes the drawing of fine distinctions unavoidable.

■ Moretrench bases an alternative argument for an immediate appeal on the "collateral order" doctrine, which treats as final (and therefore appealable under 28 U.S.C. § 1291) any judicial order that both definitively resolves an issue separate from the merits of the underlying dispute and is not effectively reviewable on appeal from

the final judgment in that dispute. See, e.g., *Cohen v. Beneficial Industrial Loan Corp.*, 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949); *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 468, 98 S.Ct. 2454, 2458, 57 L.Ed.2d 351 (1978). The difficulty here is that the issue whether the stay should have been granted cannot be disentangled from the merits of the underlying dispute. The stay was proper if but only if the proceeding in the Claims Court may affect Moretrench's entitlement to additional payments under the subcontract; if not, not only is the stay improper but GAB has broken the subcontract by refusing to make over the additional payments to Moretrench. Indeed, the merits of the stay and of the underlying dispute seem perfectly overlapping.

Last, Moretrench appeals to a notion of "practical finality": GAB has a variety of disputes with the Corps of Engineers arising out of the repair of the dam and pending before the Claims Court, and it may take years before all are finally resolved, and until then Moretrench will be irreparably harmed by being denied the payments to which it is entitled. There are two difficulties with this argument. The first is that while Moretrench tells us that the delay in payment is a hardship to a company of its size, it does not tell us what that size is or make any other attempt to lay a factual basis for its argument of irreparable harm. Prejudgment interest is the norm in contract litigation and therefore Moretrench will be compensated for the delay in receiving the payments due it under the subcontract. Of course the compensation may not be complete, for a variety of factors ranging from the interest rate to the particulars of Moretrench's business, but none of these factors has been laid before either the district court or this court. The argument of irreparable harm is pure assertion—and vigor of advocacy is no substitute for facts.

We have said that the difference between money now and money later, though real, "is not the sort of irreparable harm that is effectively unreviewable on appeal." *Uehlein v. Jackson Nat'l Life Ins. Co.*, 794 F.2d 300, 302 (7th Cir.1986). If more than that difference is involved here, as in *Palmer v. City of Chicago*, 806 F.2d 1316, 1319 (7th Cir.1986) ("a danger ... that the fees would disappear into insolvent hands"), it behooved Moretrench to demonstrate this to the district court, which it failed to do. Cf. *Korea Shipping Corp. v. New York Shipping Ass'n*, 811 F.2d 124, 127 (2d Cir.1987).

Second, to say that an order which does irreparable harm should be immediately appealable mutilates the collateral-order doctrine by making one of its elements sufficient for appealability and the other redundant. It might be a good thing to have a single comprehensive safety hatch in the final-judgment rule of 28 U.S.C. § 1291, and thus allow interlocutory orders to be appealed whenever the order threatened irreparable harm (but only then), rather than to continue adding to the present patchwork of judicial and statutory exceptions. In a case of truly irreparable harm, the reviewing court will strain to fit the case into one of the exceptions, and thanks to their number and their vague edges will usually succeed; maybe it is time to bring doctrine into line with practice.

Viewed against this background, *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.*, 460 U.S. 1, 8–10, 103 S.Ct. 927, 932–34, 74 L.Ed.2d 765 (1983), on which Moretrench heavily relies, may be a harbinger of a principle of practical finality that, by making stays appealable if but only if they cause irreparable harm, could presage the demise of the *Enelow–Ettelson* doctrine, as well as other specialized doctrines of interlocutory appealability. See *Olson v. Paine, Webber, Jackson & Curtis, Inc.*, supra, 806 F.2d at 739. But we do not think that we are authorized to read *Moses H. Cone* as broadly as this, in light of the Supreme Court's statement that "we hold only that a stay order is final when the sole purpose and effect of the stay are precisely to surrender jurisdiction of a federal suit to a state court." 460 U.S. at 10 n. 11, 103 S.Ct. at 934 n. 11. In that case the district court had issued a stay of arbitration pending the outcome of a parallel proceeding in state court. In the view

of the Supreme Court, the judgment in the state court proceeding would be res judicata in the arbitration, so that the practical effect of the stay order was indeed to expel the plaintiff from federal court. This is not such a case. As Moretrench is not even a party to the proceeding in the Claims Court, the judgment in that proceeding cannot operate as res judicata against it in this one. Moretrench's argument is not preclusion, but delay; and no principle of federal appellate jurisdiction allows a stay to be appealed merely because the stay is delaying the receipt by the plaintiff of money that he claims to be due him.

Of course Moretrench can move to dissolve the stay if and when developments in the Claims Court demonstrate to the district court's satisfaction that GAB is unjustifiably withholding moneys that it has received from the Corps of Engineers for the benefit of Moretrench. But the stay is not appealable, and Moretrench's appeal is therefore

DISMISSED.