BOARD OF EDUCATION OF OAK PARK & RIVER FOREST HIGH SCHOOL DISTRICT 200, Plaintiff–Appellant,

v.

ILLINOIS STATE BOARD OF EDUCATION and Todd A. by and through his parents Charlotte A. and Robert A., Defendants–Appellees.

No. 95–2373.

United States Court of Appeals, Seventh Circuit.

Argued Feb. 16, 1996.

Decided March 27, 1996.

As Amended April 23, 1996.

John A. Relisa (argued), Lisa A. Lopatka, Franczek, Sullivan, Mann, Crement, Hein & Relias, Chicago, IL, for Plaintiff-Appellant.

Susan Frederick Rhodes, Office of the Atty. Gen., Laura J. Miller, Northwestern University Legal Clinic, John Moynihan, Law Student (argued), Chicago, IL, for Defendants-Appellees.

Before POSNER, Chief Judge, and CUMMINGS and BAUER, Circuit Judges.

POSNER, Chief Judge.

█ The Individuals With Disabilities Education Act, 20 U.S.C. §§ 1400 et seq., entitles a disabled child to a free public education tailored to his special needs until he turns 21. Todd A., who is now 23, has been severely disabled all his life. Autistic and retarded, he cannot speak, or attend to his basic self-care needs; ·in most respects, he functions at the same level as a 3 or 4 year old, and in some at a lower level, since normal 3 or 4 year olds can speak. He and his parents became residents of the Oak Park and River Forest (Illinois) public high school district in 1987, when he was 15. Pursuant to the Act, the school district prepared an Individualized Education Program for Todd. 20 U.S.C. §§ 1401(a)(20), 1414(a)(5). Since he could not benefit from classroom instruction, the program prescribed vocational and "life skills" training for him, mostly at a store called Venture. His parents were dissatisfied with the training that he was receiving

at Venture and in December of 1992 persuaded the school district to place him in AR-RISE, a program for autistic persons that was founded by Todd's mother. In 1993, three weeks before Todd turned 21, his parents filed a complaint with the school district seeking a year (later two years) of compensatory education in the form of continuing Todd in the ARRISE program for that period at the school district's expense. Although the Act entitles disabled individuals to special educational assistance only until they reach the age of 21, a number of courts have held that if the assistance is inadequate (as Todd's parents contended was the case here, when he was in the Venture program) the individual may be awarded, in order to cure the inadequacy, additional special assistance after he reaches the age of 21. The Act does not say so. The only specific remedies that it mentions are attorneys' fees and interim relief (see below). But it authorizes the court to "grant such relief as the court determines is appropriate," 20 U.S.C. § 1415(e)(2), and these courts have assumed, consistent with the Supreme Court's generous reading of the provision in *School Comm. of Town of Burlington v. Department of Education,* 471 U.S. 359, 369–70, 105 S.Ct. 1996, 2002–03, 85 L.Ed.2d 385 (1985), that this authorization encompasses the full range of equitable remedies and therefore empowers a court to order adult compensatory education if necessary to cure a violation. *Parents of Student W. v. Puyallup School District,* 31 F.3d 1489, 1497 (9th Cir.1994); *Pihl v. Massachusetts Dept. of Education,* 9 F.3d 184, 187–89 (1st Cir.1993). This is surely correct in light of the *Burlington* case, and while we treated the issue as an open one in *Timms v. Metropolitan School District,* 722 F.2d 1310, 1314–16 (7th Cir.1983), that was before *Burlington.* The defendants do not question the propriety of such relief.

The Act provides that during any proceedings to enforce it "the child shall remain in the then current educational placement of such child" unless the parents agree otherwise. 20 U.S.C. § 1415(e)(3)(A). This is the "stay put" provision, on which see *Honig v. Doe,* 484 U.S. 305, 108 S.Ct. 592, 98 L.Ed.2d 686 (1988); *Hunger v. Leininger,* 15 F.3d 664, 667–68 (7th Cir.1994). Under it, Todd

remains in the ARRISE program to this day—since the proceedings kicked off by his parents' claim for compensatory education have not yet wound up—even though he has now been there more than two years past his twenty-first birthday. Unless the school district's appeal succeeds (the significance of this qualification will become apparent shortly), Todd will have received, by virtue of the stay-put provision, more relief than his parents ever sought on his behalf.

After an appellate hearing officer (see 20 U.S.C. § 1415(c)) ordered the school district to provide Todd with six months of compensatory education, the school district, as was its right, § 1415(e)(2), sought judicial review in the district court. Meanwhile, it was refusing to comply with the stay-put provision, which is to say refusing to foot Todd's bill at ARRISE, on the ground that the stay-put provision does not apply to a person who has reached his or her twenty-first birthday. Todd asked the district judge to order the school district to comply with the provision and the judge so ordered, whereupon the district wrote a check for some $30,000 to ARRISE, covering the cost of Todd's remaining in the program between October 1993, which was a month or two after his twenty-first birthday, and October 1995, which was a month or two after his twenty-third birthday. The reason for these lags is that although Todd turned 21 on August 21, 1993, the school district did not get around to stopping paying for him until October.

 The appeal to this court is from the order directing the school district to comply with the stay-put provision; and we must first decide whether it is an appealable order. It is if it is either a preliminary injunction, 28 U.S.C. § 1292(a)(1), or what is called a "collateral order"—an order that *finally* determines an issue that is *separate* from the merits of the litigation (hence "collateral") and that cannot be *effectively* reviewed on appeal from the final judgment in the litigation. *Cohen v. Beneficial Industrial Loan Corp.,* 337 U.S. 541, 546–47, 69 S.Ct. 1221, 1225–26, 93 L.Ed. 1528 (1949); *Gulfstream Aerospace Corp. v. Mayacamas Corp.,* 485 U.S. 271, 276, 108 S.Ct. 1133, 1136–37, 99 L.Ed.2d 296 (1988); *Cassidy v. Cassidy,* 950

F.2d 381, 383 (7th Cir.1991); *In re Repetitive Stress Injury Litigation,* 11 F.3d 368, 372 (2d Cir.1993); *Powers v. Southland Corp.,* 4 F.3d 223, 231 (3d Cir.1993); *Moretrench American Corp. v. S.J. Groves & Sons Co.,* 839 F.2d 1284, 1288–89 (7th Cir.1988); 15A Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure § 3911 (2d ed. 1991). The order here, commanding the school district to comply with the stay-put provision, is both. The freezing of the status quo during litigation is the traditional office of a preliminary injunction, *Roland Machinery Co. v. Dresser Industries, Inc.,* 749 F.2d 380, 383 (7th Cir. 1984); *Republic of the Philippines v. Marcos,* 862 F.2d 1355, 1361 (9th Cir.1988) (en banc); *Tom Doherty Associates, Inc. v. Saban Entertainment, Inc.,* 60 F.3d 27, 34 (2d Cir.1995); *Hoxworth v. Blinder, Robinson & Co.,* 903 F.2d 186, 196 (3d Cir.1990), and that is exactly what the stay-put provision, repeated in the judge's order, does. Several of the cases that we have cited for the "traditional office" note, it is true, the frequent ambiguity of the term "status quo," but in this case there is no ambiguity. Todd was in the ARRISE program and the state was paying; his parents wanted him to remain in the program at the state's expense—wanted, in other words, the status quo to continue undisturbed.

We need not decide whether the "stay put" provision itself is an injunction. There are such animals as statutory injunctions. The automatic stay in bankruptcy is the best known. 11 U.S.C. § 362. Another is the permanent statutory injunction against collecting from a debtor a debt that has been discharged in bankruptcy. 11 U.S.C. §§ 524(a)(2), (3); *In re White Motor Credit,* 761 F.2d 270, 274 (6th Cir.1985). Since Congress can attach criminal and civil penalties to the violation of statutory provisions, we suppose that it can make such violations punishable as contempts. It has been held to have done that with respect to violations of the automatic stay in bankruptcy, *In re Skinner,* 917 F.2d 444, 447 (10th Cir.1990) (per curiam); 2 Collier on Bankruptcy para. 362.11 (15th ed., Lawrence P. King ed. 1995), a form of statutory injunction as we have said. Not being a judicial order, a statutory injunction cannot be "appealed," though it can be challenged by the sort of declaratory or injunctive action brought by the school district. None of this matters. The judge entered an order commanding the school district to comply with the stay-put provision, and it is the only candidate for an appealable order.

■ The order is cryptic: "We [the royal we] order the District to comply with the [Individuals with Disabilities Education Act's] 'stay put' provision." But it is sufficiently clear and definite to be enforceable by the usual sanctions for violating an injunction—civil or criminal contempt—so that the order has not only the form of an injunction but also the bite that a real injunction has. The significance of our reference to "bite" lies in the fact that an injunction that is too vague to be enforced is not appealable. The defendant, being free to ignore it, is not hurt by it and so has no real controversy with the plaintiff within the meaning of Article III of the Constitution. E.g., *DDI Seamless Cylinder Int'l, Inc. v. General Fire Extinguisher Corp.,* 14 F.3d 1163, 1166 (7th Cir.1994); *Bates v. Johnson,* 901 F.2d 1424, 1428 (7th Cir.1990). But the "injunction" here was unequivocal, except as to the precise meaning of "staying put," and as to that it was perfectly clear to all concerned that this meant the school district's paying for the cost of the ARRISE program until the litigation ends and not shifting Todd to another (perhaps cheaper) program. So the district judge could have imposed a contempt sanction for violation of the order, as indeed he threatened to do. The fact that the payment of money was the principal relief contemplated by the order does not detract from its injunctive character, even though a conventional order to pay damages is not, of course, an injunction. As we said, freezing the status quo is a conventional office of injunctions, and often it has financial implications. Although the order here required the school district to keep on paying, it also prevented the school district from transferring Todd to a different program.

■ Alternatively, the order is appealable as a collateral order. It deals with an issue

entirely separate from the merits of the underlying dispute. The issue is whether the stay-put provision ceases to operate when the disabled individual reaches the age of 21, while the merits concern whether Todd's Individualized Education Program was so poorly designed or implemented that it violated the Individuals With Disabilities Education Act and so entitled him to compensatory education. The order resolves the issue of the duration of Todd's stay-put protection with finality; the judge would have no occasion to revisit it later in the case. The third element of a collateral order, that it not be effectively reviewable at the end of the case, is also met, as it is conceded that if the parents lose the suit they will not be able to reimburse the school district for the expense of keeping Todd in the ARRISE program. *Palmer v. City of Chicago*, 806 F.2d 1316, 1318–20 (7th Cir.1986); *Conticommodity Services, Inc. v. Ragan*, 826 F.2d 600, 601–02 (7th Cir.1987).

Now there seems to be, though it is rarely emphasized, a fourth element of the collateral-order doctrine—that the issue ruled on by the district court be "important." E.g., *Behrens v. Pelletier*, —— U.S. ——, 116 S.Ct. 834, 133 L.Ed.2d 773 (1996); *Lauro Lines s.r.l. v. Chasser*, 490 U.S. 495, 502, 109 S.Ct. 1976, 1980, 104 L.Ed.2d 548 (1989) (concurring opinion); *Gulfstream Aerospace Corp. v. Mayacamas Corp., supra*, 485 U.S. at 291–92, 108 S.Ct. at 1144–45 (concurring opinion), and cases cited there; *Wilk v. American Medical Ass'n*, 635 F.2d 1295, 1298 n. 6 (7th Cir.1980); see also 15A Wright, Miller & Cooper, *supra*, § 3911.5. The *Cohen* decision itself described collateral orders as ones "too important to be denied review." *Cohen v. Beneficial Industrial Loan Corp., supra*, 337 U.S. at 546, 69 S.Ct. at 1226. And yet the proposition that the "importance" of the ruling sought to be appealed is a condition of its appealability is, superficially at least, quite odd. Important to whom? If to the appellant, the element seems implicit in the third element, that of irreparable harm. If to the world at large, it is a curious condition to engraft onto a right to appeal. It means that a party to litigation may have no *effective* right to appeal at all (this possibility is implicit in his having to show, in order to come within the bounds of the doctrine, that he will sustain irreparable harm if he is not permitted to appeal now) merely because the erroneous ruling that he wishes to correct lacks transcendent significance.

But maybe "importance" does have reference to the need of the appellant rather than to the significance for society and the purpose is merely to make sure that the irreparable harm cross some minimum threshold of severity, since a harm could be at once irreparable and slight and if so it would not warrant a departure from the final decision rule. This was the point at issue between Justice Scalia, now writing for a majority in *Behrens v. Pelletier* (and muting the emphasis he had placed on the "importance" element in his concurring opinions in *Gulfstream* and especially *Lauro Lines*) and Justice Breyer, who in dissent suggested that a second ruling denying qualified immunity (a ruling on summary judgment, after an earlier ruling on a motion to dismiss had been denied and that denial had been appealed) was not important enough to warrant an immediate appeal. Compare —— U.S. at ——, 116 S.Ct. at 838–41 with *id.* at ——–——, 116 S.Ct. at 844–46.

■ A moment's reflection will bring into view a further point—that if irreparable harm is to be weighed in this fashion, the applicability of the collateral-order doctrine in a particular case ought to depend on the likelihood of a reversal, as well. If that likelihood is slight, the appellant has, realistically, very little to lose if his appeal is not heard. This consideration suggests that if the error in the ruling sought to be appealed as a collateral order is plain, an appeal will lie, and likewise if it is strongly arguable that there was error—provided in either case that the appellant's stake in the appeal (holding the meritoriousness of the appeal constant) is substantial. If it is very unlikely that the appeal will succeed, perhaps because the issue on which the district judge ruled is one confided to the trial court's discretion, an appeal may not lie even if the appellant's stake is (otherwise) substantial; for the net stake, as it were—the stake discounted by the probability that the appellant will secure

it by the appeal—will be small if that probability is truly slight.

We need not penetrate more deeply into this maze. The question whether stay-put relief can continue after the child reaches 21 is a clear-cut legal question of significant though not great monetary importance to the appellant and of great importance to the administration of the statute. And, as we shall see, the correct answer to the question—in favor of the appellant—is not open to serious doubt, so that this is not a case in which the benefit from taking an immediate appeal is actually very slight because although the stakes seem great the appeal is highly unlikely to succeed.

■ Alas, we are not yet through with the preliminaries; we are still toiling in the foothills of the issue that the appellant wants us to resolve. At the oral argument of the appeal the parents' lawyer told us that the litigation had become moot when Todd reached the age of 23 last August 21. For on that day he completed his second adult year in the ARRISE program, and all that he had sought by way of relief in these proceedings, which began—remember—with a complaint to the school district about the inadequate implementation of Todd's Individualized Education Program, was two more years in the ARRISE program at the school district's expense. He got what he asked for and therefore, counsel argues, the school district should abandon the suit. This is wrong. The school district has paid only through October of last year. If the stay-put order is valid, it owes for another five months at least. This point is independent of whether the underlying claim for compensatory education is moot. It also erases the issue of appealability. If the issue of compensatory education is moot because Todd has had his two extra years in the ARRISE program at the school district's expense, then the litigation in the district court is over except for the order directing the school district to comply with the stay-put provision. That then becomes an uncontroversially final, appealable decision.

The issue of compensatory education would not be moot if the school district were trying to get back its $30,000 by persuading us in this appeal that Todd was not entitled to those two years of compensatory education. Ordinarily to get an injunction you must post a bond and if the injunction is later reversed the person enjoined is entitled to recover his damages, at least up to the limit of the bond, caused by the wrongful injunction. Fed. R.Civ.P. 65(c); *Coyne–Delany Co. v. Capital Development Bd.*, 717 F.2d 385, 390–94 (7th Cir.1983). But the school district failed to ask that Todd's parents be made to post a bond when Judge Duff issued the order (to comply with the stay-put provision) that we have construed as an injunction, and anyway the school district is not trying to get the $30,000 or any part of it back. So probably the issue of Todd's entitlement to compensatory education is moot, but that doesn't matter, for the reason we explained.

■ What is true and could be thought to make the school district's attack on the stay-put order moot is that in its effort to obtain an appellate determination of a recurring and important issue—how long the stay-put obligation lasts—the school district has missed an opportunity to cut its short-term financial loss by abandoning the suit. But this strategic choice does not make the lawsuit moot. A desire for a favorable precedent will not prevent a case from becoming moot, *United States v. Fischer*, 833 F.2d 647, 649 (7th Cir.1987); *United States v. Articles of Drug*, 818 F.2d 569, 574 (7th Cir.1987), but the fact that such a desire figures in the decision not to abandon or settle a suit does not *make* the suit moot.

■ So we have jurisdiction and come at last to the merits—the merits, that is, of the district judge's interpretation of the stay-put provision, not the merits of Todd's claim for compensatory education. We think that the stay-put provision does indeed cease to operate when a child reaches the age of 21. Except for the judge-created remedial exception for claims for compensatory education, the entitlements created by the Individuals with Disabilities Education Act expire when the disabled individual turns 21. The purpose of the stay-put provision is to give the child's parents the choice of keeping the child in his existing program until their dispute

with the school authorities is resolved. Once the child reaches the age at which he no longer is entitled to the protection of the Act, the stay-put provision, which is intended to prevent the child from losing benefits to which he is entitled, loses its rationale. Its continued application would confer benefits beyond the limit set by Congress.

The exception is where a claim for compensatory education is made. Compensatory education is a benefit that can extend beyond the age of 21. But to allow the stay-put provision, which operates automatically, to operate beyond the age of 21 would enable parents to obtain adult benefits for their child to which they had no entitlement by the simple expedient of filing a claim for compensatory education on the eve of their child's turning 21—exactly what happened here. The parents' lawyer concedes (indeed emphasizes, in his effort to show that the case is moot) that they have already received benefits in excess of what they are entitled to. They sought only two years of compensatory education, yet if the stay-put order is valid they are well into their third year.

We cannot think of a reason why Congress would want the stay-put provision used in this way, especially in a case in which the parents may be trying to get money for themselves as providers of compensatory education. The parents appeal to what they claim to be the plain meaning of the statute. They argue that in asking us to reject the district judge's reading the school district is asking us to rewrite the statute. It is not. With the exception of compensatory education, which is, as we said, indeed exceptional and nowhere expressly authorized by the statute, the statute's protections are limited to minors—the statutory domain is childhood disability—and so it is natural to presume that the limitation is carried into the stay-put provision, which is silent on the question.

Todd's parents express concern that unless the stay-put provision can follow the child into adulthood a school district that was afraid that a claim for compensatory education would be made might expel the child on his twenty-first birthday. It would do so, they argue, in the hope that once he was out of the system the parents would not pursue their claim for compensatory education because, if the claim was successful, to reap its benefits the parents would have to interrupt their child's current program and reinsert him into the school system from which he had been expelled. This seems rather a fanciful fear but in any event there is nothing to prevent parents who have a well-founded concern that the school district is employing such Machiavellian tactics from coupling their claim for compensatory education with a request for a preliminary injunction to prevent the school system from thwarting the claim by expelling the child. Cf. *Pihl v. Massachusetts Dept. of Education, supra,* 9 F.3d at 186; *Timms v. Metropolitan School District, supra,* 722 F.2d at 1312–13. That would be a garden-variety status-quo-preserving preliminary injunction. They just are not entitled to the injunction automatically, by force of the stay-put provision.

Todd's parents, curiously, deny the automaticity of the stay-put provision. They argue that 20 U.S.C. § 1415(e)(2) gives the judge an equitable discretion to waive the provision if the parents are abusing it in the way we suggested they might. Nothing in section 1415(e)(2) supports this interpretation, although the Supreme Court has recognized a residual equity power to lift the stay-put provision if necessary to prevent physical injury. *Honig v. Doe,* 484 U.S. 305, 328, 108 S.Ct. 592, 606–07, 98 L.Ed.2d 686 (1988). All that section 1415(e)(2) does is authorize judicial review of administrative rulings on claims under the Act and, as we have noted, authorize the court to grant appropriate relief—which would not ordinarily be thought to encompass the denial of a statutory right. While arguing that subsection (e)(3) (the stay-put provision) should be read literally, the parents ask us to interpolate a provision of their own invention in the preceding subsection. We are not swayed by this fancy footwork. We agree with the school district that the stay-put provision does not operate in favor of an individual who has reached his or her twenty-first birthday. The order directing the school district to stay put is therefore

REVERSED.